# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KATRINA BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-cv-00004-C |
| | ) | |
| CONTINENTAL AEROSPACE | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Continental Aerospace Technologies, Inc.'s ("Continental") Motion for Summary Judgment (Doc. 57) (the "Motion"). The parties have filed briefs and evidentiary materials in support of their respective positions (Doc. 56, 58, 60, 61, 62, 63), and this Court held oral argument on the Motion on August 23, 2022. The Motion is ripe for resolution. After careful consideration, the Court **GRANTS** Continental's Motion.

## I. Introduction and Procedural Background

On March 27, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") alleging that Continental terminated her employment because of her sex and in retaliation for complaining of sex discrimination on January 14, 2020. (*See* Doc. 56-5.) On September 30, 2020, the EEOC issued its Dismissal and Notice of Rights, and indicated that, "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Doc. 56-6.)

Plaintiff filed this lawsuit on January 4, 2021. (Doc. 1.) She subsequently filed her First Amended Complaint on June 23, 2021. (Doc. 20.) Plaintiff asserts two causes of action in her First Amended Complaint: (1) sex discrimination in violation of Title VII of the Civil Rights Act

of 1964 ("Title VII") and (2) retaliation for allegedly complaining of sex discrimination on January 14, 2020.  (*Id.*)  Continental filed a Motion for Summary Judgment on June 15, 2022.  (Doc. 57.)

## II.    Findings of Fact

### A.    Plaintiff's Employment with Continental

Plaintiff began working at Continental as its Quality Director on July 17, 2018.  (Doc. 56-1, PageID.385, ¶ 1; PageID.390-93.)  Plaintiff was promoted to Plant Manager effective April 29, 2019.  (*Id.*, PageID.385-86, ¶ 1; PageID.395.)   As Continental's Quality Director and Plant Manager, Plaintiff reported to Michael Skolnik, who was Continental's Executive Vice President, Global at the time Plaintiff was hired and promoted.  (*Id.*, PageID.386, ¶ 4; Doc. 56-2, PageID.433, 57:5-7.)

Richard Pennington, Continental's Director of Distributor Operations (and current Vice President of North American Operations), began working with Plaintiff when she was promoted to the position of Plant Manager.  (Doc. 56-1, PageID.385-86, ¶ 2, 7.)  While employed by Continental, Plaintiff was disrespectful to Mr. Pennington and would not engage in civil conversations with him.  (Doc. 56-1, PageID.386, ¶ 7.)  She accused Mr. Pennington of enjoying or being "good at" firing employees.  (*Id.*)  She was also jovial when Continental employees she did not like were terminated.  (*Id.*)  At one point, Mr. Pennington went to speak with Plaintiff to determine how they could improve their working relationship and better work together.  (*Id.*)  The conversation did not go well and Plaintiff was upset, questioned Mr. Pennington's integrity, and made unfounded accusations against Mr. Pennington.  (*Id.*)

Plaintiff was given multiple opportunities to correct her actions toward co-employees participated in several coaching sessions related to her behavior, and failed to correct her behavior. (Doc. 56-1, PageID.387, ¶ 10.)  On one such occasion, Plaintiff attended a dinner with Mr. Skolnik,

who had been promoted to be Continental's Chief Operating Officer; Tim Word, Continental's Global Human Resources Director; Vince Faucher, Continental's Director of Change Management; and Mr. Pennington.  (*Id.*)  At that dinner, Plaintiff was counseled as to how she could improve her business relationship and other interactions with Mr. Pennington.  (*Id.*)  Plaintiff concedes that the dinner occurred and that it was set up in order to attempt to improve her relationship with Mr. Pennington.  (Doc. 56-2, PageID.441-45, 73:11-77:3; PageID.454, 92:11-21; PageID.467-68, 143:21-144:23.)  Plaintiff was also instructed to perform "sit-downs" with Mr. Pennington and Mr. Faucher to improve her working relationships with them.  (Doc. 56-2, PageID.450-43, 88:20-91:12.)  She also had meetings with Mr. Skolnik and Mr. Word to work on fostering her relationships with Mr. Pennington and Mr. Faucher.  (Doc. 56-2, PageID.454-56, 92:22-94:3.)

Plaintiff's treatment of her co-employees and subordinates was so bad that several employees either resigned or attempted to resign from Continental.  (Doc. 56-1, PageID.386-87, ¶ 8.)  As a result of Plaintiff's treatment of Mr. Pennington, he accepted a position with another company in January 2020.  (*Id.*)  He also informed Mr. Skolnik and Mr. Word that he could no longer work in the environment created by Ms. Baker.  (*Id.*)  Mr. Skolnik and Mr. Word conducted an investigation and determined that Ms. Baker also treated other employees poorly.  (*Id.*)  Another employee, Brianna Abrams, resigned her position at Continental as a result of Ms. Baker's treatment of her.  (*Id.*, PageID.387, ¶ 9.)  Ms. Abrams returned to Continental after Ms. Baker was fired.  (*Id.*)  Ms. Baker also embarrassed Mary Caron Downing, Continental's Human Resources Manager, in public.  (Doc. 56-3, PageID.476, ¶ 2, 3.)

### B.      January 14, 2020 Meeting with Mary Caron Downing

Plaintiff had a conversation with Mary Caron Downing on January 14, 2020.  (Doc. 56-3, PageID.477, ¶ 4.)   According to Plaintiff, the purpose of the conversation was to have Ms. Downing review a PowerPoint presentation that Plaintiff had prepared regarding her issues with Mr. Pennington.  (Doc. 56-2, PageID.413-14, 8:18-9:10; PageID.417-18, 12:22-13:8; PageID.431-32, 54:8-55:6.)  During that conversation, Plaintiff told Ms. Downing that she was not a part of the "good ole boys network" and that Mr. Skolnik "froze her out" when he realized that Mr. Pennington was resigning as a result of Plaintiff's conduct toward him.  (*Id.*)

During the January 14, 2020 conversation with Ms. Downing, Plaintiff did not mention gender or sex discrimination.  (Doc. 56-2, PageID.418, 13:9-16; Doc. 56-3, PageID.477, ¶ 4.) Plaintiff did not state that she was being discriminated against because she is a woman.  (*Id.*)  Ms. Downing did not mention discrimination to Plaintiff during their conversation and did not understand Plaintiff to be complaining about gender or sex discrimination.   (Doc. 56-2, PageID.423-26, 28:20-31:1; Doc. 56-3, PageID.477, ¶ 4.)  It was Ms. Downing's understanding that Plaintiff was trying to obtain information from Ms. Downing because Plaintiff knew she was about to lose her job as a result of her treatment of Mr. Pennington and other employees.  (Doc. 56-3, PageID.477, ¶ 4.)  Ms. Downing did not report the January 14, 2020 conversation with Plaintiff to any of her superiors prior to Plaintiff's termination because Plaintiff did not report sex or gender discrimination.  (*Id.*, ¶ 5.)  Plaintiff also testified that she does not know whether Mr. Skolnik or Mr. Word were aware of the January 14, 2020 conversation between her and Ms. Downing.  (Doc. 56-2, PageID.438-39, 69:12-70:12; PageID.440, 72:6-16; PageID.441, 73:1-5.)

### C.        Termination of Plaintiff's Employment with Continental

Plaintiff's employment with Continental was terminated on January 16, 2020.  (Doc. 56-1, PageID.386, ¶ 5; PageID.397.)   The decision to terminate Plaintiff's employment was made by Mr. Skolnik and Mr. Word.   (Doc. 56-4, PageID.484.)   Continental terminated Plaintiff's employment as a result of her treatment of co-employees and subordinates.   (Doc. 56-1, PageID.386, ¶ 6; Doc. 56-3, PageID.476, ¶ 3.)   More specifically, Plaintiff was disrespectful to her co-employees and subordinates, had problems working with other Continental employees, and there were several instances where she would embarrass other Continental employees in public. (*Id.*)

Plaintiff testified that she understood she lost her job because her treatment of Mr. Pennington caused him to resign.   (Doc. 56-2, PageID.427-28, 44:22-45:21; PageID.429-30, 53:17-54:1.)  She also admitted that she had been informed of the following performance issues: "team not aligned, poor communication, trust issue, make changes and leaving work undone, misinterpreted message during communication meeting."  (*Id.*, PageID.431, 55:7-20; *see also* PageID.464-66, 140:18-142:13.)   Plaintiff testified she understood that she had been given an opportunity to correct her perceived performance issues since the dinner with Mr. Skolnik, Mr. Word, Mr. Faucher, and Mr. Pennington.  (*Id.*, PageID.469, 145:15-22.)

### D.        Continental's Policies and Procedures

Continental's policies and procedures require that its employment practices "shall conform with the principles and provisions set forth by the applicable federal or state statutes, laws, regulations, orders or directive as may now or later pertain to the rights of applicants for employment or of employees of [Continental]."   (Doc. 56-1, PageID.388, ¶ 15; PageID.399.) Moreover, Continental "strives to eliminate any economic and social injustices of discrimination

within its operations.  [Continental] does not tolerate discrimination on the basis of race, color, national origin, religion, sex, age, or non-job-related disability . . . ."  (Doc. 56-1, PageID.388, ¶ 16; PageID.401-08.)  Continental also encourages its employees to report violations of the law, regulations, and/or Continental's policies.  (Doc. 56-1, PageID.388, ¶ 17; PageID.401-08.)  Plaintiff received a copy of these policies and procedures on July 17, 2018.  (Doc. 56-1, PageID.388, ¶ 18, PageID.410.)

### E.    Purported Comparators

Plaintiff identifies two purported comparators who were allegedly similarly situated to her in all material respects and who were allegedly treated more favorably than she was by Continental:  Vince Faucher and Greg Cable.[1]  Mr. Faucher did not have the same problems dealing with co-employees and subordinates as Ms. Baker.  (Doc. 56-1, PageID.387, ¶ 12.)  Moreover, he was not required to participate in coaching sessions to improve his treatment of and relationships with employees at Continental.[2]  (*Id.*)  Similarly, Mr. Cable did not have the same problems dealing

---

[1] In her Response, Plaintiff attempts to identify a third comparator:  Chris Pollitt.  (Doc. 62, PageID.584-85.)  Continental objected to Plaintiff's evidence regarding Mr. Pollitt based on the "sham affidavit rule" and because any such evidence constitutes inadmissible hearsay.  (Doc. 63, PageID.596-97.)  The Court sustains Continental's objections to Plaintiff's testimony regarding Mr. Pollitt as set forth in her Affidavit (Doc. 60-2) because she was given an opportunity to identify any supposed comparators in her deposition, failed to do so, and then contradicted her sworn testimony with a "sham affidavit."  *See, e.g., Larry v. City of Mobile*, No. 1:19-cv-1008-TFM-MU, 2021 WL 5167293, *5 (S.D. Ala. Nov. 5, 2021) (holding that an affidavit may be disregarded when it contradicts a person's own deposition testimony for the purpose of creating a genuine issue of material fact).  The Court also sustains Continental's objections to Plaintiff's testimony relating to "accus[ations]" against Mr. Pollitt as inadmissible hearsay.  *See id.* at *6 (holding that "with regard to any portions of [a] declaration that rely upon the testimony or declarations of others, that information cannot come in through the [p]laintiff").  As such, Plaintiff has failed to present any admissible evidence supporting her argument that Mr. Pollitt is similarly situated in all material respects and was treated more favorably by Continental.

[2] Plaintiff also attempted to introduce evidence through her Affidavit (Doc. 60-2) that Mr. Faucher was required to undergo a performance improvement plan and coaching items.  (Doc. 62, PageID.575.)  Continental objected to Plaintiff's evidence regarding Mr. Faucher because it was not based on Plaintiff's personal knowledge and/or constituted inadmissible hearsay.  (Doc. 63,

with co-employees and subordinates as Ms. Baker.  (Doc. 56-1, PageID.387, ¶ 13.)  Mr. Cable's

employment was terminated by Continental as a result of poor performance and, specifically, his

inability to manage Continental's supply chain.   (*Id.*; Doc. 56-2, PageID.458, 127:10-12;

PageID.460, 129:8-12; PageID.461-63, 132:17-134:4.)

## III.   Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).   The party seeking summary judgment bears the "initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material fact."  *Clark v. Coats &*

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986)).

"An issue of fact is material if it is a legal element of the claim under the applicable

substantive law which might affect the outcome of the case. It is genuine if the record taken as a

whole could lead a rational trier of fact to find for the nonmoving party."  *Reeves v. C.H. Robinson*

*Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).   "As to materiality, the

substantive law will identify which facts are material.  Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

---

PageID.597-98.)  The Court sustains Continental's objections to Plaintiff's evidence regarding Mr.
Faucher's disciplinary history because Plaintiff admitted in her deposition that she obtained any
knowledge regarding said disciplinary history through conversations with Mr. Skolnik and/or Mr.
Word.  (Doc. 60-1, PageID.538-39, 81:13-82:3.)

judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*5 If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992).

"To withstand a summary judgment motion, the non-moving party must establish that, based on the evidence in the record, there can be more than one reasonable conclusion as to the proper verdict." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If a review of the evidence presented reveals that the non-movant has failed to produce evidence sufficient to support a jury verdict in his favor, then summary judgment should be granted." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).  A sufficient issue exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

## IV.     Conclusions of Law

### A.     Sex Discrimination Claims

In this case, Plaintiff cannot establish a sex discrimination claim under either the *McDonnell Douglas* framework or under a "convincing mosaic" theory.  Specifically, Plaintiff has failed to provide evidence of any purported comparators who were similarly situated in all material respects and who were treated more favorably than she was by Continental.  Regardless,

8

Continental has met its burden of proving that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment and Plaintiff has failed to show that Continental's reason for termination was pretext for discrimination.  Additionally, the circumstantial evidence presented by Plaintiff to establish a "convincing mosaic" of discrimination cannot overcome the lack of comparator evidence presented by Plaintiff.

### 1. *McDonnell Douglas* Framework

Title VII prohibits employers from "discriminat[ing] against any individual any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).  When a plaintiff does not have direct evidence of discrimination,[3] and she relies upon circumstantial evidence, she must utilize the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny.  *See Thomas v. Ashton & Co., Inc.*, No. 1:19-cv-48-THM-M, 2021 WL 640815, *4 (S.D. Ala. Feb. 18, 2021).  Under the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a *prima facie* case of sex discrimination and, if she is able to do so, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Thomas*, 2021 WL 640815 at *4 (quoting *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007)).  Once the employer is able to do so, "the burden of production of

---

[3] This Court has stated that "[d]irect evidence of discrimination is evidence which reflects a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee." *Thomas v. Ashton & Co., Inc.*, No. 1:19-cv-48-THM-M, 2021 WL 640815, *4 (S.D. Ala. Feb. 18, 2021) (internal quotations omitted).  Moreover, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor could constitute direct evidence of discrimination." *Id.* (internal quotations omitted).  Here, Plaintiff admitted in her deposition that she does not have any direct evidence that Continental discriminated against her based on her sex or gender.  (*See* Doc. 56-2, PageID.414, 9:12-15.)

discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Id.*

### a.    *Prima Facie* Case

Plaintiff may establish a *prima facie* case of sex discrimination by showing that she "(1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class or that her employer treated similarly situated employees outside of her class more favorably." *Thomas*, 2021 WL 640815 at *5 (internal quotations omitted).[4]

In 2019, the Eleventh Circuit Court of Appeals determined that "a plaintiff asserting an intentional-discrimination claim under *McDonnell Douglas* must demonstrate that she and her proffered comparators were 'similarly situated in all material respects.'" *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019).  Normally, a similarly situated comparator (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff," (2) "will have been subject to the same employment policy, guideline, or rule as the plaintiff," (3) "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff," and (4) "will share the plaintiff's employment or disciplinary history." *Id.* at 1227-28.  The court recognized that:

> An employer is well within its rights to accord different treatment to employees who are differently situated in "material respects"—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories.  Finally, the all-material-respects standard serves the interest of sound judicial administration by allowing for summary judgment in *appropriate* cases–

---

[4] In this case, there is no dispute that Plaintiff (1) was a member of a protected class, (2) was qualified for her job with Continental; and (3) suffered an adverse employment action.  As such, the Court's analysis will focus on the fourth element of the *McDonnell Douglas* framework— whether Plaintiff was replaced by someone outside the protected class or that her employer treated similarly situated employees outside of her class more favorably.

namely, where the comparators are simply too dissimilar to permit a valid inference
that invidious discrimination is afoot.

*Id.* at 1228-29 (emphasis original).  In that case, the plaintiff was terminated from her job as a

police officer because she had several chronic conditions, including a heart condition, that would

not allow her to undergo Taser or pepper-spray training.  The plaintiff filed a lawsuit alleging race

and sex discrimination because two white males were allegedly treated more favorably by her

employer than she was.  Specifically, the plaintiff alleged that the white males were placed on

leave pursuant to the police department's physical fitness and medical policy and were given an

opportunity to correct their deficiencies before having their employment reinstated.  After

discussing the above-referenced standard for comparators, the en banc court held that the plaintiff

failed to establish that she was treated differently from individuals who were similarly situated in

all material respects because the white males were subject to different employment policies and

they had different underlying medical conditions that were remediable.  *See id.* at 1229-31.

Utilizing the guidance provided in *Lewis*, the Eleventh Circuit has repeatedly held that

employers are entitled to summary judgment when the plaintiff cannot show that other individuals

who were "similarly situated in all material respects" were treated more favorably by the employer.

*See, e.g., Nealy v. SunTrust Bank*, No. 21-11358, 2021 WL 5112819, *2 (11th Cir. Nov. 3, 2021)

(affirming the district court's grant of summary judgment in favor of an employer because the

plaintiff's purported comparators were not subject to the same policy and because others remained

employed after complying with the policy at issue); *Johnson v. Airbus Def. & Space, Inc.*, 858 F.

App'x 304, 309-10 (11th Cir. 2021) (affirming the district court's grant of summary judgment in

favor of an employer because the plaintiff could not identify any comparators who were similarly

situated in all material respects); *James v. City of Montgomery*, 823 F. App'x 728, 733-34 (11th

Cir. 2020) (affirming the district court's grant of summary judgment in favor of an employer

11

because the plaintiff did not produce evidence showing that the purported comparators shared the same disciplinary history or were being disciplined for the same type of conduct).

The district courts in this Circuit have also used the standard set out in *Lewis* to grant summary judgment in favor of employers when plaintiffs cannot make the requisite showing.  *See, e.g., Jackson v. Marion Military Inst.*, No. 2:19-cv-629-KD-N, 2021 WL 4304831, *6-7 (S.D. Ala. Aug. 19, 2021) (granting summary judgment in favor of the employer because the purported comparators performed different duties than the plaintiff); *Thomas*, 2021 WL 640815 at *5-7 (granting summary judgment in favor of the employer because the purported comparators had different supervisors, had a familial relationship with the company's upper managers, and engaged in a different type of misconduct than the plaintiff); *Solomon v. Sutton*, No. 1:18-cv-5715-MLB-JKL, 2020 WL 9601849, *9-10 (N.D. Ga. May 8, 2020), *adopted by* 2020 WL 9601769, *2 (N.D. Ga. July 1, 2020) (granting summary judgment in favor of the employer because the plaintiff failed to prove that the purported comparators had a similar employment history, similar duties or responsibilities, or similar misconduct and/or performance deficiencies); *Earle v. Birmingham Bd. of Educ.*, No. 2:18-cv-697-GMB, 2020 WL 470285, *6-7 (N.D. Ala. Jan. 29, 2020), *aff'd*, 843 F. App'x 164 (11th Cir. 2021) (granting summary judgment in favor of the employer because the plaintiff failed to show that the purported comparators had the same employment history or were subject to the same employment policies); *Jones v. Procter & Gamble Paper Co.*, No. 1:18-CV-046 (LAG), 2019 WL 11638413, *8-9 (M.D. Ga. May 8, 2019)  (granting summary judgment in favor of the employer because the purported comparators did not engage in the same type of misconduct and did not have the same decisionmakers).

In this case, Plaintiff failed to offer any evidence establishing that Continental replaced her with a male.  In fact, Plaintiff testified in her deposition that she does not know whether Continental

12

replaced her with a male employee.  (Doc. 56-2, PageID.414, 9:16-19.)  As such, Plaintiff must provide sufficient comparator evidence to establish her *prima facie* case.

While Plaintiff alleges that Vince Faucher and Greg Cable are adequate comparators,[5] she has failed to provide any evidence that those individuals were "similarly situated in all material respects."  Specifically, Plaintiff did not offer any evidence regarding Mr. Faucher or Mr. Cable's employment history or disciplinary history.[6]  Instead, Plaintiff offers only the conclusory allegation that Mr. Faucher and Mr. Cable "had the same disciplinary history" as Plaintiff.  (Doc. 62, PageID.584.)  To the contrary, Continental provided evidence that neither Mr. Faucher[7] nor Mr. Cable had the same problems dealing with co-employees or subordinates as Plaintiff.  (Doc. 56-1, PageID.387, ¶ 12, 13.)  As such, Plaintiff has failed to establish her *prima facie* case of sex discrimination because she cannot establish that Mr. Faucher or Mr. Cable were "similarly situated in all material respects."

Even if the purported comparators were "similarly situated in all material respects" (and they are not), Plaintiff failed to establish that Mr. Faucher or Mr. Cable were treated more favorably than her.  Plaintiff alleges that both purported comparators received an opportunity to correct their perceived deficiencies.  (Doc. 56-2, PageID.449, 85:12-18; PageID.458-59, 127:18-128:7.)  Here, the undisputed evidence shows that Plaintiff received the same opportunities to

---

[5] As discussed above, Plaintiff failed to offer any admissible evidence that Chris Pollitt was an adequate comparator.

[6] To the extent Plaintiff attempts to offer testimony regarding Mr. Faucher's disciplinary history, the Court determined that Continental's objections to Plaintiff's testimony are due to be sustained because they are not based on Plaintiff's personal knowledge and/or constitute inadmissible hearsay.

[7] The evidence is also undisputed that Mr. Faucher and Plaintiff had different supervisors.  (Doc. 56-2, PageID.421, 21:17-21; PageID.433, 57:5-7.)

correct her perceived deficiencies before her employment was terminated. (Doc. 56-2, PageID.441-45, 73:11-77:3; PageID.450-53, 88:20-91:12; PageID.454-56, 92:11-94:3; PageID.467-68, 143:21-144:23.) Plaintiff testified in her deposition that she had a dinner with Mr. Pennington and senior Continental management in order to improve her working relationship with Mr. Pennington, she was coached to perform "sit-downs" with Mr. Pennington and Mr. Faucher to improve her relationships with them, and she had meetings with Mr. Skolnik and Mr. Word to foster her relationships with Mr. Pennington and Mr. Faucher. (*Id.*) As such, Continental established that Plaintiff was given the same opportunities to correct her deficiencies that she alleges Mr. Faucher and Mr. Cable[8] were given.

In this case, Plaintiff has failed to establish a *prima facie* case of sex discrimination because she failed to provide any evidence of any comparators who were similarly situated in all material respects and who were treated more favorably that she was by Continental. For these reasons, Continental's Motion for Summary Judgment as to Plaintiff's sex discrimination claim is **GRANTED**.

### b.    Legitimate, Nondiscriminatory Reason / Pretext

Assuming Plaintiff could establish a *prima facie* case of sex discrimination (and she cannot), the burden then shifts to Continental to rebut her *prima facie* case by producing evidence that the employer's action was taken for some legitimate, non-discriminatory reason. If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears." *Jackson*, 2021 WL 4304831 at *8 (internal quotations omitted). This Court has recognized that "a legitimate, nondiscriminatory

---

[8] Additionally, as to Mr. Cable, his employment was terminated because he did not improve after receiving the alleged coaching sessions. (Doc. 56-1, PageID.387, ¶ 13; Doc. 56-2, PageID.458, 127:10-12; PageID.460, 129:8-12; PageID.461-63, 132:17-134:4.)

reason may be a subjective one, so long as the employer articulates a clear and reasonably specific basis upon which it based its subjective opinion." *Id.* (internal quotations omitted). Moreover, an employer may also legitimately fire someone "because it honestly believed that the employee violated a company policy, even if it was mistaken in such belief . . . ." *Thomas*, 2021 WL 640815 at *8 (internal quotations omitted).

In this case, Continental has established a legitimate, nondiscriminatory reason for terminating Plaintiff's employment—her treatment of co-employees and subordinates. (*See* Doc. 56-1, PageID.386, ¶ 6; Doc. 56-3, PageID.476, ¶ 3.) Continental established that Plaintiff was disrespectful to her co-employees and subordinates, had problems working with other Continental employees, and would embarrass other Continental employees in public. (*See id.*)

Once an employer articulates a legitimate, nondiscriminatory reason for terminating a plaintiff's employment, a plaintiff must offer evidence showing that the employer's reasons are pretext for illegal discrimination. *See Thomas*, 2021 WL 640815 at *8. In order to show pretext:

> A plaintiff must specifically respond to the employer's proffered reason and produce evidence directly rebutting that reason. A plaintiff may show that an employer's reasons are pretextual by showing that weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in its proffered reasons for its actions were such that a reasonable factfinder could find them unworthy of credence. If the proffered reason is one that would motivate a reasonable employer, a plaintiff cannot simply quarrel with the wisdom of the employer's decision. A proffered reason cannot be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason.

*Jackson*, 2021 WL 4304831 at *8 (internal citations and quotations omitted). When an employee cannot show that her employer's reasons for terminating her employment are not true, she cannot establish pretext. *See Thomas*, 2021 WL 640815 at *8 (holding that, because the employer consistently stated that the plaintiff was terminated for violating the zero-tolerance fighting policy, "the pretext element has not been met because [the plaintiff] has failed to establish that [his supervisor] acted dishonestly in his investigation and decision to terminate [the plaintiff's]

15

employment and that discrimination was the real reason for his termination"); *Solomon*, 2020 WL 9601849 at *11 (holding that the employee could not could not establish pretext because she could not show that her employer's reasons for terminating her employment "are not true and that the true reason is discrimination").

Plaintiff failed to prove that Continental's legitimate, nondiscriminatory reason for terminating her employment was pretext for discrimination. While Plaintiff argues that Continental's reasons for terminating her employment were pretext because she is not alleged to have violated any company policy, she was not afforded progressive discipline, she was held accountable for the morale of employees who were not her direct reports, and she was terminated three (3) days after she was notified of performance issues, she has failed to offer any evidence showing that Continental's legitimate, nondiscriminatory reason for terminating her employment was not true. To the contrary, Continental established that Plaintiff was informed of her performance deficiencies and she understood that she lost her job because Mr. Pennington was resigning as a result of her treatment of him. (Doc. 56-2, PageID.427-28, 44:22-45:21; PageID.429-30, 53:17-54:1; PageID.431, 55:7-20; PageID.464-66, 140:18-142:13.) Plaintiff also understood that she had been given an opportunity to correct her issues since the dinner with Mr. Skolnik, Mr. Word, Mr. Faucher, and Mr. Pennington. (*Id.*, PageID.469, 145:15-22.)

Here, Continental has established that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and Plaintiff failed to establish that Continental's legitimate, nondiscriminatory reason was pretext for discrimination. For these reasons, Continental's Motion for Summary Judgment as to Plaintiff's sex discrimination claim is **GRANTED**.

## 2. "Convincing Mosaic" Theory

Recognizing that she cannot meet her burden of proving a *prima facie* case of sex discrimination under the *McDonnell Douglas* framework, Plaintiff attempts to make a showing of a "convincing mosaic of circumstantial evidence" to prove that discriminatory intent motivated Continental's employment decision. *See Hampton v. Amedisys Holding, LLC*, No. 1:20-cv-1874-WMR-JKL, 2021 WL 8200759, *25 (N.D. Ga. Oct. 15, 2021). A "convincing mosaic" may be shown through "(1) suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Mason v. Ruskin Co.*, No. 1:19-cv-00703-ECM, 2021 WL 3234605, *10 (M.D. Ala. July 29, 2021) (internal quotations omitted). "The evidence presented under a 'convincing mosaic' *must be sufficient enough* to overcome the lack of comparator evidence." *Jackson*, 2021 WL 4304831 at *10 (internal quotations omitted) (emphasis orginal).

Nonspecific and generalized statements that individuals outside of a plaintiff's protected class were treated more favorably are insufficient to establish a "convincing mosaic." *Watkins v. CSA Equip. Co., LLC*, No. 1:20-00244-JB-N, 2022 WL 179602, *10-11 (S.D. Ala. Jan. 1, 2022) (holding that conclusory allegations of mistreatment of people inside of the plaintiff's protected class are insufficient to establish a "convincing mosaic"); *Jackson*, 2021 WL 4304831 at *10 (holding that the plaintiff failed to present evidence of a "convincing mosaic" where she relied upon conclusory statements that her employer discriminated against her and made no effort to connect the alleged mistreatments to her sex or race); *Mason*, 2021 WL 3234605 at *11 (stating that "courts have rejected nonspecific and generalized complaints that white people received better treatment compared to African Americans as a means to show a convincing mosaic"); *McNeal v. Int'l Paper*, No. 1:19-cv-602-KD-N, 2021 WL 3083035, *8 (S.D. Ala. July 21, 2021) (holding that

17

evidence regarding inadequate comparators is insufficient to establish a "convincing mosaic"); *Zachery v. Coosa County Bd. of Educ.*, No. 2:18-cv-982-RAH-JTA, 2021 WL 359731, *8-9 (M.D. Ala. Feb. 2, 2021) (holding that general statements that more White individuals are employed and one anecdotal story regarding a Black individual being treated more severely than a White individual do not establish a "convincing mosaic"). Similarly, evidence of "perceived slights" is insufficient to establish the "convincing mosaic" necessary to survive summary judgment. *See Hampton*, 2021 WL 8200759 at *25 (holding that "perceived slights . . . do not show that [the employer or the plaintiff's supervisor] systematically gave better treatment to non-African American employees").

As discussed above, Plaintiff failed to offer any evidence regarding purported comparators who were similarly situated in all material respects and who were treated more favorably than she was by Continental. Instead, Plaintiff offers only evidence of generalized statements of perceived slights, which are insufficient to establish a "convincing mosaic" of discriminatory intent necessary to survive summary judgment. To the extent Plaintiff offers generalized statements that male employees were treated better than she was, any such statements are similarly insufficient to survive summary judgment. As such, Plaintiff's evidence of a "convincing mosaic" of sex discrimination is insufficient to overcome her lack of comparator evidence. For these reasons, Continental's Motion for Summary Judgment as to Plaintiff's sex discrimination claim is **GRANTED**.

### B. Retaliation

As with her sex discrimination claim, Plaintiff cannot establish a *prima facie* case of retaliation because her proof does not establish that she was engaged in any statutorily protected activities or that there was a causal connection between any alleged protected activities and her

termination.   Regardless (and as discussed above), Continental established a legitimate, nondiscriminatory reason for terminating Plaintiff's employment and she failed to prove that Continental's offered reason was pretext for discrimination.

### 1.   *Prima Facie* **Case**

In order to demonstrate a *prima facie* case of retaliation, "the plaintiff must establish:  (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two."  *Frazier v. City of Mobile, Ala.*, No. 1:16-00400-KD-MU, 2018 WL 692933, *5 (S.D. Ala. Feb. 1, 2018).  In this case, Plaintiff failed to prove that she engaged in a statutorily protected activity or that there was a causal connection between the alleged protected activity and her termination.

### a.   **Statutorily Protected Activity**

Title VII's opposition clause prohibits an employer from discriminating against an employee for opposing any practice made unlawful under Title VII.  *See Jackson*, 2021 WL 4304831 at *11.  "A complaint about an employment practice, however, constitutes protected opposition *only if the individual explicitly or implicitly communicates a reasonable belief that the practice constitutes unlawful employment discrimination* against a class protected by Title VII or Section 1981."  *Id.* (internal quotations omitted) (emphasis added).

Courts in this Circuit have routinely held that a plaintiff does not engage in statutorily protected activity when she reports general complaints of unfairness without connecting those complaints to illegal discrimination.  *See Bowens v. Escambia County Bd. of Educ.*, No. 20-532-CG-B, 2022 WL 1005062, *7 (S.D. Ala. April 4, 2022) (holding that an email raising "racial equity" concerns that does not imply that there is any racial disparity in the treatment alleged by plaintiff is not statutorily protected activity); *Jackson*, 2021 WL 4304831 at *12 (holding that

sending a letter regarding a pay discrepancy that does not reference sex or race being the reason for the discrepancy is not a statutorily protected activity); *McNeal*, 2021 WL 3083035 at *9 (holding that a grievance that makes no allegations that the employer engaged in illegal employment practices is not statutorily protected activity); *Gosa v. Wal-Mart Stores East, LP*, No. 16-0055-CG-B, 2017 WL 457198, *12-13 (S.D. Ala. Feb. 2, 2017) (holding that complaints regarding the plaintiff being treated differently do not constitute a statutorily protected activity); *Smith*,  2015 WL 8668287 at 6-7 (holding that complaints of harassment without mentioning race and references to "racial tension" did not constitute statutorily protected activities); *Williams v. Kamtek, Inc.*, No. 2:09-CV-1517-SLB, 2012 WL 13088657, *9 (N.D. Ala. March 26, 2012) (holding that a complaint about being treated unfairly without mentioning race was not statutorily protected activity).

In *Moore-Williamson v. Mercer University*, No. 5:05-cv-140(CAR), 2007 WL 737520, *5 (M.D. Ga. March 7, 2007), the plaintiff alleged that she engaged in statutorily protected activity when she met with her employer's human resources department and threatened to sue her employer for defamation and "the situation that was going on in the office and harassment."  The court stated that, "[f]or an informal complaint, such as the one voiced by [the plaintiff], to constitute protected expression, *there must be some mention of discrimination.  Id.* (emphasis added).  In other words, "[a]n employee cannot complain to her supervisor about unfair treatment in a racially-neutral way and expect the employer to divine that her complaint is really of racial or gender discrimination.  At a minimum, *an employee must communicate to her employer her belief that discrimination was occurring.*"  *Id.* (internal citations and quotations omitted) (emphasis added).  In that case, the plaintiff conceded that she did not mention race or sex discrimination during her meeting with the human resources department.  As such, the court held that:

> [The plaintiff's] failure to mention race or gender discrimination to anyone at [her employer]-regardless of her reason-is fatal to her retaliation claim.  There is no way that anyone at [her employer] could glean from her general protestations to Human Resources that [the plaintiff] believed herself to be the victim of race or gender discrimination.  Because [the plaintiff] failed to give [her employer] any indication that her complaints related to race or gender discrimination, she did not engage in "protected activity" as required by Title VII's retaliation provision.

*Id.* at *6.

Plaintiff argues that she complained of sex discrimination during her January 14, 2020 conversation[9] with Mary Caron Downing when she referenced the "good ole boys network."[10] (Doc. 62, PageID.569.)  Continental, however, established that Plaintiff did not mention sex or gender discrimination during her January 14, 2020 conversation with Ms. Downing.  (Doc. 56-2, PageID.418, 13:9-16; PageID.423-26, 28:20-31:1; Doc. 56-3, PageID.477, ¶ 4.)  Instead, Plaintiff met with Ms. Downing on January 14, to discuss a PowerPoint presentation that Plaintiff had prepared regarding her issues with Mr. Pennington.  (*Id.*, PageID.413-14, 8:18-9:10; PageID.417-18, 12:22-13:8; PageID.430-31, 54:8-55:6.)  During that conversation, Plaintiff did not state that she was being discriminated against because she is a woman.  (Doc. 56-2, PageID.420, 18:9-18.)

---

[9] Plaintiff also attempts to rely on an alleged conversation with Tim Word to support her retaliation claim.  (*See* Doc. 62, PageID.589.)  Plaintiff admitted in her deposition that she did not tell Mr. Word that she was being discriminated against because she was a woman.  (*See* Doc. 56-2, PageID.446, 78:18-22.)  Instead, Plaintiff spoke with Mr. Word because she was "still struggling with, you know, having Val and Vince, you know, working for me."  (*Id.*, PageID.445, 77:21-23.)  As such, the alleged January 9, 2020 conversation with Tim Word does not constitute statutorily protected activity because Plaintiff failed to raise a reasonable belief that discrimination was occurring.

[10] To the extent that Plaintiff referenced the "good ole boys network" during her conversation with Ms. Downing, she testified that she was referring to a group of employees who were "undermin[ing] her" and "trying to squeeze her out."  (Doc. 56-2, PageID.420, 18:9-18.)  Plaintiff, however, did not testify that she was referring to sex discrimination when she referenced the "good ole boy network."  (*See id.*)

Moreover, Ms. Downing did not mention discrimination to Plaintiff during their conversation and did not understand Plaintiff to be complaining about gender or sex discrimination. (Doc. 56-2, PageID.423-26, 28:20-31:1; Doc. 56-3, PageID.477, ¶ 4.) It was Ms. Downing's understanding that Plaintiff was trying to obtain information because Plaintiff knew she was about to lose her job because of her treatment of Mr. Pennington and other employees. (Doc. 56-3, PageID.477, ¶ 4.) Plaintiff failed to communicate to Ms. Downing any alleged belief that illegal sex discrimination was occurring and, therefore, Plaintiff failed to engage in a statutorily protected activity sufficient to support a retaliation claim. For these reasons, Continental's Motion for Summary Judgment as to Plaintiff's retaliation claim is **GRANTED**.

### b.    Causal Connection

Even if Plaintiff could prove that she engaged in statutorily protected activity during her January 14, 2020 conversation with Ms. Downing (and she cannot), she failed to establish the requisite causal connection between that conversation and her termination. To do so, she must demonstrate that 'the decision maker was aware of the protected conduct at the time of the adverse employment action.'" *Willis v. Publix Super Markets, Inc.*, 619 F. App'x 960, 962 (11th Cir. 2015) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).

"[C]ommon sense tells us that a decisionmaker's lack of awareness of an employee's engagement in a protected activity renders the decisionmaker unable to retaliate on the basis of said activity." *Frazier*, 2018 WL 692933 at *11; *see also Howell v. Ala. Law Enforcement Agency*, No. 16-0257-WS-B, 2017 WL 2623904, *8-9 (S.D. Ala. June 15, 2017) (holding that a retaliation claim must fail where the decision maker were aware of the alleged protected activity at issue); *Smith*, 2015 WL 8668287 at *7 (recognizing that a plaintiff's retaliation claim will fail when those

involved in the termination did not learn of any alleged complaints of discrimination until after the termination decision had been made).

In *Martin v. Financial Asset Management Systems, Inc.*, 959 F.3d 1048 (11th Cir. 2020), the court addressed the issue of a decision-maker's knowledge of the alleged protected activity in the context of a retaliation claim. The court stated that "a plaintiff needs to show (among other things) that the decisionmaker actually knew about the employee's protected expression." *Id.* at 1053. Additionally, "a jury finding that the decisionmaker was aware of an employee's protected conduct 'must be supported by reasonable inferences from the evidence, not mere speculation.'" *Id.* (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1355 (11th Cir. 1999)). In that case, the employer presented evidence that the individual making the decision to terminate the plaintiff's employment was not aware of the alleged protected activity. In response to the plaintiff's argument that the temporal proximity between the protected activity and the adverse employment action was sufficient to establish a causal connection, the court stated:

> But unrebutted evidence that the decision maker did not have knowledge of the employee's protected conduct means that temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection. After all, a decision maker cannot have been motivated to retaliate by something unknown to him, whether or not the two events happened close in time.

*Id.* at 1054 (internal citations and quotations omitted). Because the plaintiff failed to establish that the decision-maker was aware of her alleged protected activity, the court held that she could not establish the requisite causal connection and affirmed the summary judgment entered in favor of the employer. *See id.* 1053-57.

Plaintiff does not dispute that Mr. Skolnik and Mr. Word made the decision to terminate her employment. (Doc. 56-4, PageID.484.) Plaintiff also failed to offer any evidence that either Mr. Word or Mr. Skolnik were aware of her January 14, 2020 meeting with Ms. Downing, and, to the contrary, Continental's undisputed evidence is that the January 14, 2020 meeting was not

reported to Mr. Word or Mr. Skolnik.  (Doc. 56-2, PageID.438-39, 69:12-70:12; PageID.440, 72:6-16; PageID.441, 73:1-5; Doc. 56-3, PageID.477, ¶ 5.)  As such, Plaintiff cannot prove that the decision-makers responsible for terminating her employment were aware of her January 14, 2020 meeting with Ms. Downing and she has failed to establish a causal connection between that meeting and her termination.  For these reasons, Continental's Motion for Summary Judgment as to Plaintiff's retaliation claim is **GRANTED**.

**2.      Legitimate, Nondiscriminatory Reason / Pretext**

As discussed above, Plaintiff has failed to establish a *prima facie* case of retaliation. Nonetheless, and for the same reasons set forth in the Court's analysis of Plaintiff's sex discrimination claim, Continental has met its burden of establishing that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and Plaintiff has failed to meet her burden of establishing that Continental's reason for terminating her employment was pretext for discrimination.

**V.      Conclusion**

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact and that Continental is entitled to entry of judgment as a matter of law.  As such, Continental's Motion for Summary Judgment (Doc. 57) is **GRANTED** as to all claims.   This action is **DISMISSED WITH PREJUDICE** in its entirety.  A separate Judgment will enter.

**DONE** and **ORDERED** this the 29th day of September, 2022.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**